UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA A. VALDER,


                                    Plaintiff,

                                                            DECISION AND ORDER

                                                            02-CV-6386L


                      v.

JO ANNE B. BARNHART,



                                    Defendant.
_____


## INTRODUCTION

        This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final

decision of the Commissioner of Social Security ("the Commissioner") that Debra A. Valder

("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social

Security Disability Insurance ("SSDI") or Supplemental Security Income ("SSI") benefits.

        Both the Commissioner and plaintiff have moved for judgment on the pleadings pursuant to

FED. R. CIV. P. 12(c).  For the reasons discussed below, plaintiff's motion (Dkt. #7) is denied, the

Commissioner's motion (Dkt. #9) is granted, and the complaint is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, born June 14, 1966, was thirty-five years old during the relevant period. (T. 38, 104). She completed high school and has past relevant work as a factory worker assembling car parts. She last performed that job in March 2001, when she stopped working at the behest of her physician. (T. 39-42). Plaintiff returned to work on a part-time basis in March 2002 as a mental health aide and started performing this job full-time in September 2002. (T. 46). In that position, she was able to sit anytime she needed to and did not have to lift any weight. (T. 47, 50). Plaintiff testified that she returned to work against the advice of her doctors because of financial need. (T. 47-48).

Plaintiff filed applications for SSDI and SSI benefits on April 10, 2001 alleging that she has been disabled since March 20, 2001 as a result of symptoms associated with Charcot Marie Tooth Disease, a progressive neuropathic disease characterized by weakness, atrophy, and loss of sensation in the legs and feet. (T. 77). Plaintiff's application was denied on June 18, 2001. (T. 63-66). Plaintiff requested a hearing, which was held before Administrative Law Judge John P. Costello ("ALJ") on March 4, 2002. (T. 67). On March 27, 2002, the ALJ found that plaintiff was not disabled. (T. 75-83). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (T. 96-98).

Plaintiff filed this action on July 23, 2002, but the Administration was unable to locate plaintiff's case file. By Stipulation and Order dated November 27, 2002, the Court remanded the action pursuant to sentence six of 42 U.S.C. § 405(g) to locate or reconstruct the file. (Dkt. #3). On remand, plaintiff's file was reconstructed and a second hearing was held before ALJ Costello on

November 13, 2003. (T. 34-59). On January 12, 2004, the ALJ issued a second decision finding that plaintiff was not disabled. (T. 4-16).  By Stipulation and Order dated May 19, 2004, the case was reopened in District Court.  (Dkt. #4).  Both parties now move for judgment on the pleadings.

## DISCUSSION

### I.      Definition of Disability

Under the Social Security Act ("the Act"), a person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).  To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed impairment, the

-3-

Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II.      The ALJ's Decision

In conducting the five-step process, the ALJ first found that plaintiff did not engage in substantial gainful activity between March 20, 2001 and May 1, 2002.  After May 1, 2002, the ALJ found that plaintiff was engaging in substantial gainful activity in her new position.  At step two, the ALJ found that plaintiff had Charcot Marie Tooth disease and was recovering from bilateral foot surgery, impairments that were severe within the meaning of the regulations.  At step three, the ALJ concluded that plaintiff's impairments did not meet or equal any of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ next determined that plaintiff retained the residual functional capacity to perform sedentary work.  Applying the Medical-Vocational Guidelines as a basis for decision-making, the ALJ concluded at step five that plaintiff retained the residual functional capacity to perform a significant number of jobs that existed in the national economy. (T. 7-16).

## III.     Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991).  Substantial evidence is defined as "'more than

a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner.  *Veino*, 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773.  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112.  Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998)("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'")(quoting *Johnson*, 817 F.2d at 986).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's determination that plaintiff is not disabled.  Plaintiff, however, contends that the ALJ's

decision is based on legal error and is not supported by substantial evidence.  Plaintiff claims that

the ALJ erred by not finding plaintiff disabled under Listing 11.14, by not according sufficient

weight to the opinions of her treating physicians, and by improperly assessing her credibility.

I agree with the Commissioner and find that the ALJ applied the correct legal principles and

that her decision is supported by substantial evidence.

## IV.    Listing 11.14

At step three, the ALJ determined that plaintiff's impairments did not meet the required level

of severity for Listing 11.14.  To be disabled under Listing 11.14, entitled "peripheral neuropathies,"

plaintiff must show that she has a neurological impairment that, "in spite of prescribed treatment,"

results in "[s]ignificant and persistent disorganization of motor function in two extremities, resulting

in sustained disturbance of . . . gait and station (see 11.00C)."  *See* 20 C.F.R. Pt. 404, Subpt. P. App.

1, §§ 11.04B; 11.14.  Section 11.00C explains that "persistent disorganization of motor function"

can present itself "in the form of paresis or paralysis [or] ataxia and sensory disturbances" and that

"[t]he assessment of impairment depends on the degree of interference with locomotion . . . ."  *Id.*

at § 11.00C.

There is substantial evidence to support the ALJ's conclusion that, although plaintiff had

problems with her "gait and station" (that is, her manner of walking and standing) during the period

in question (March 20, 2001 through May 1, 2002), those problems did not rise to Listing-level

severity.   The ALJ found that, although plaintiff had disorganization of motor function, it was not

"significant and persistent" or sustained. The ALJ reasoned that plaintiff's work history and

extensive gaps in treatment supported a finding that her symptoms were not of Listing-level severity.

There is no dispute that plaintiff has peripheral neuropathy and has been diagnosed with Charcot Marie Tooth Disease that affects her feet and legs. (T. 134; 161-63). That diagnosis alone, however, is not enough to prove that plaintiff is disabled. *See Maher v. Secretary of Health and Human Servs.*, 898 F.2d 1106, 1108 (6th Cir. 1990). There must be evidence of "sustained disturbance" of plaintiff's manner of walking and standing that results in "significant and persistent disorganization of motor function" that is measured by "the degree of interference with locomotion." 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 11.00C; 11.04B; 11.14.

Plaintiff points to evidence from her treating physicians that she had bilateral "foot drop" and walked with a "steppage gait."[1] She also cites statements from medical sources that she had pes cavus[2] deformity in both feet, and experienced increased pain after standing or walking during certain periods of time. (T. 130-36; 161-63). Much of the evidence upon which plaintiff relies, however, is from February 2000 through March 2001 and predates her March 20, 2001 onset date. Although these records show that plaintiff had problems with her feet that affected how she walked, plaintiff was able to work at a full-time job that required her to be on her feet ten hours a day. This alone undermines any contention that she experienced a "significant and persistent disorganization of motor function."

---

[1] "Foot drop" is the "[p]artial or total inability to dorsiflex the foot, as a consequence of which the toes drag on the ground during walking unless a steppage gait is used." STEDMAN'S MEDICAL DICTIONARY 698 (27th ed. 2000). Steppage gait is defined as "a gait in which the advancing foot is lifted higher than usual so that it can clear the ground, because it cannot be dorsiflexed." *Id.* at 722.

[2] Pes cavus or talipes cavus is a foot deformity marked by "an exaggeration of the normal arch of the foot." STEDMAN'S MEDICAL DICTIONARY 1784 (27th ed. 2000).

Furthermore, to meet Listing 11.14, plaintiff must experience disorganization of motor function "in spite of prescribed treatment." *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 11.14.  The records show that for a short time in February 2000 and then beginning in March 2001, plaintiff's symptoms became severe enough that Dr. Schwarz took plaintiff out of work because she could not stand for more than an hour at a time.  Plaintiff's job at that time did not allow for sedentary work and plaintiff's symptoms had progressed.  However, on May 5, 2001 Dr. Perillo performed surgery to correct deformities in plaintiff's feet and to help alleviate her symptoms, including pain.  There is no dispute that, following this surgery, both Dr. Schwarz and Dr. Perillo found that plaintiff's gait improved and her pain symptoms were alleviated.  (T. 139; 168).  In addition, Dr. Schwarz noted that plaintiff's gait was "partially relieved by bracing" (T. 168) and that her pain was well-controlled with Neurotin. (T. 158).  In October 2002, plaintiff reported to Dr. Perillo that she did well standing without the use of braces or special shoes. (T. 201).  Moreover, at the hearing, plaintiff testified that she did not require a cane to walk. (T. 49).  She also testified that she is able to grocery shop, drive a car, and perform household chores, tasks that are inconsistent with a "significant and persistent disorganization of motor function" characterized by a sustained disturbance of the ability to walk and stand.

## V.      Dr. Perillo's April 2, 2002 Opinion Regarding Listing 11.14

In finding that plaintiff's impairments did not meet Listing 11.14, the ALJ disregarded the statement of plaintiff's treating podiatrist, Dr. Perillo, that plaintiff's impairments met the requirements for Listing 11.14. (T. 10).  Plaintiff argues that this was error.  I disagree.

On April 2, 2002, Dr. Perillo checked a box "yes" on a form given to him by plaintiff's attorney on which he was asked, in language that parroted the Listing, whether plaintiff's condition led to "significant and persistent disorganization of motor function in the lower extremities resulting in the disturbance of gait and station." (T. 166). I find that the ALJ properly disregarded Dr. Perillo's opinion and that in doing so did not violate the so-called "treating physician's rule." *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

First, the law does not *require* that the ALJ accept Dr. Perillo's opinion on whether the requirements for Listing 11.14 were met. That is an issue reserved for the Commissioner to decide. Contrary to plaintiff's argument, treating source opinions on issues reserved for determination by the Commissioner are not entitled to any significant weight. *See* 20 C.F.R. §§ 404.1527(e)(2)-(3); 416.927(e)(2)-(3) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . , the final responsibility for deciding these issues is reserved to the Commissioner. . . . We will not give any special significance to the source of an opinion on issues reserved tot he Commissioner . . . .").

Furthermore, the ALJ's determination that Dr. Perillo's opinion was unconvincing is well-supported by the record. The ALJ reasoned that Dr. Perillo twice performed surgery to correct problems plaintiff was having with her feet. After both procedures, Dr. Perillo and other physicians reported only that plaintiff could not work with her previous acute symptoms and while recuperating from surgery. None of the physicians opined that plaintiff could not work at all. The ALJ also found it significant that Dr. Perillo's own treatment notes showed extensive gaps between plaintiff's

appointments with him which coincided with times when plaintiff was actively seeking work or was actually working. In fact, at the time when Dr. Perillo completed this form, he had not seen plaintiff in almost a year (since June 15, 2001). In addition, the ALJ noted that in a February 2, 2002, medical assessment Dr. Perillo completed just two months earlier, he gave different and somewhat confusing and contradictory opinions regarding plaintiff's limitations. (T. 12; 150-57). Finally, I agree with the ALJ that Dr. Perillo's assessments are cursory and fail to take into account the fact that plaintiff returned to work in March 2002 in a sedentary position that allowed her to sit as needed.

## VI.    Plaintiff's Ability to Perform Other Work in the National Economy

At steps four and five, the ALJ determined that plaintiff had the residual functional capacity to perform substantially all of the requirements of sedentary work, including lifting and carrying up to ten pounds occasionally, standing and walking up to two hours with lunch and customary breaks, and sitting for up to six hours. The ALJ found that, during certain time-limited periods just before and after her surgery, plaintiff was more functionally limited than this, but she recovered from those periods. (T. 13). The ALJ next concluded that plaintiff could not return to her past relevant work because it involved light or medium work. At step five, the ALJ applied Medical-Vocational Guidelines Rule 201.27 and found that, given plaintiff's age (37), education (high school education), and work experience, she had the exertional capacity to perform a significant number of jobs in the national economy.

I find that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff could perform substantially all of the requirements of sedentary work during the period at

issue.  Plaintiff's treating neurologist, Dr. Schwarz, opined in June 2001, in a report to the Office of

Vocational and Educational Services for Individuals with Disabilities, that plaintiff was capable of

performing a sedentary job.  (T. 168).  Although Dr. Schwarz stated that plaintiff had certain

limitations in how long she could stand, the report was completed only weeks after plaintiff's foot

surgery.  In addition, the Commissioner's review physician found that plaintiff could perform the

full range of sedentary work, although she was limited in her ability to stand, but this was expected

to improve after surgery. (T. 141-46).  Furthermore, plaintiff testified that she did not need a cane

to walk, that she can climb stairs, and that she drives a car to work. (T. 49-50).

In addition, the record shows that plaintiff eventually returned to work full-time.  In March

2002, plaintiff began working part-time at a sedentary job at which she could sit at will.  (T.46-47).

Eventually, she returned to work full-time and, as of the November 2003 hearing, she was still

employed in that position.  Although plaintiff claims that she returned to work because of financial

need and against her physicians' advice, the fact remains that she was capable of performing other

substantial gainful activity.  In addition, both Dr. Schwarz and Dr. Perillo concluded that plaintiff

could perform work that did not require her to be on her feet all of the time, and neither found that

she was disabled from work entirely.

Finally, I disagree with plaintiff that the ALJ erred in analyzing her credibility.  The ALJ

found that plaintiff's testimony regarding her complaints of pain and limitation of function were not

totally credible to the extent alleged in light of the medical record.  In so concluding, the ALJ

properly considered plaintiff's testimony and weighed it in accordance with various factors,

including plaintiff's daily activities, the frequency of pain, the type, dosage, and side effects of

medication, and other treatment that relieves pain. (T. 12-13). *See* 20 C.F.R. §§ 404.1529(c); 416.929(c). It was reasonable for the ALJ to find that plaintiff's subjective complaints were not entirely credible to the extent she claimed severe incapacitation.  It is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir.1984); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A.). Because the ALJ's credibility analysis and factual findings are based on application of the proper legal principles, the Court may not examine the evidence and substitute its own judgment for that of the Commissioner. 42 U.S.C. § 405(g); *Parker v. Harris*, 626 F.2d 225 (2d Cir. 1980); *see also Glaze v. Barnhart*, 242 F.Supp.2d 233, 236 (W.D.N.Y.2003); *Crowley v. Barnhart*, 220 F.Supp.2d 176, 181 (W.D.N.Y. 2002).

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.  Plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied.  The complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        January 25, 2006.